# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Appellant,

v.

JASON ROBERT HYATT,
Defendant and Respondent.

S290426

Fourth Appellate District, Division Three
G063126

Orange County Superior Court
19NF3055

August 6, 2026

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Evans, and Goldman* concurred.

---

\*      Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. HYATT

S290426


Opinion of the Court by Kruger, J.


Penal Code section 1381 permits a defendant who "has been sentenced to and has entered upon a term of imprisonment in a state prison" to demand that the district attorney promptly bring any other pending criminal charges to trial. If the district attorney fails to try the defendant's outstanding charges within 90 days, the charges must be dismissed.

In this case, the trial court, sitting as a magistrate, dismissed a felony complaint based on a district attorney's failure to comply with a Penal Code section 1381 demand. The defendant made the demand after he was sentenced to a state prison term on unrelated charges but before he had been delivered to prison custody. The District Attorney appealed, arguing that the section 1381 demand was premature. Disagreeing, the Court of Appeal affirmed the dismissal of the felony complaint.

As the case comes to us, it presents two questions. The first question is whether the Court of Appeal should have entertained the District Attorney's appeal in the first place. The answer turns on whether the magistrate's dismissal order qualified as a dismissal in a "felony case" appealable by statute in the Court of Appeal (Pen. Code, §§ 1235, 1238, subd. (b)(8)), even though the dismissed felony allegations had been made only by complaint and not by indictment or information. The second question concerns the merits of the Court of Appeal's

1

decision. The answer to that question turns on the meaning of the statutory phrase "has been sentenced to and has entered upon a term of imprisonment in a state prison." (*Id.*, § 1381.) Does the phrase mean that the demand may be made as soon as the court has pronounced a sentence including a term in state prison? Or must the defendant have been both sentenced and delivered to prison custody?

As to the first question, we conclude, in common with the Court of Appeal in this case, that a magistrate's order dismissing a felony complaint is a dismissal order in a "felony case" that may be appealed to the Court of Appeal. As to the second question, we conclude, contrary to the Court of Appeal in this case, that a defendant has not "entered upon a term of imprisonment in a state prison" for purposes of Penal Code section 1381 until the defendant's "actual delivery . . .into the custody of the Director of Corrections." (Pen. Code, § 2900, subd. (a).) Before the defendant has been delivered into prison custody, a Penal Code section 1381 demand is premature.

## I.

In November 2019, the Orange County District Attorney filed a felony complaint accusing defendant Jason Robert Hyatt of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), with two serious felony priors. A magistrate oversaw Hyatt's arraignment, at which Hyatt entered a plea of not guilty. But the magistrate never conducted a preliminary examination on the complaint, due in part to repeated continuances caused by the COVID-19 pandemic, as well as Hyatt's later failure to appear.

The Orange County complaint was still outstanding when, on August 12, 2022, Hyatt was sentenced to a six-year prison

2

sentence on unrelated charges in Riverside County.  The same day, Hyatt's counsel in the Riverside matter personally served the Orange County District Attorney with a demand under Penal Code section 1381 (section 1381).  The demand, signed by Hyatt's counsel, informed the District Attorney that Hyatt was "currently committed to a term of imprisonment in the California Department of Corrections," and that as of August 12, 2022, he was "in the custody of the Riverside County Sheriff's Department, pending transportation to the California Department of Corrections and Rehabilitation[.]"  The letter provided Hyatt's full name, the name and address of the county facility holding him, and the name, address, and phone number of his counsel.  The letter demanded that the Orange County charge be brought to trial within 90 days.  The District Attorney's office stamped the demand letter as "received" on August 17, 2022.

On August 25, 2022, a deputy district attorney sent a response to Hyatt at the Riverside County Jail, without copying or otherwise notifying Hyatt's counsel, who had prepared and signed the demand letter.[1]  The response stated that because

_____

[1]  This was evidently an error.  As the District Attorney acknowledges, an attorney should not directly communicate with a party known to be represented by counsel; the deputy district attorney should have directed his communications to counsel and not to Hyatt himself.  Had this error not occurred, this case might well not be here.  As the Court of Appeal majority observed, "had the District Attorney simply complied with its obligation to communicate with Hyatt's attorney, rather than sending its response letter to Hyatt at the county jail, Hyatt's attorney could have obviated this dispute by promptly sending (or advising Hyatt to send) another section 1381

Hyatt sent his demand letter "while still in county jail, the demand is invalid . . . and does not invoke the running of the 90-day time limit" set by section 1381. As a result, the District Attorney had decided to "take no further action at this time." As the Court of Appeal observed, and the District Attorney apparently concedes, there is no evidence in the record that Hyatt received this response. The District Attorney filed the response letter in the docket of the Orange County Superior Court on September 2, 2022. Five days later, Hyatt was admitted into Wasco State Prison.

Ten months later, while still at Wasco State Prison, Hyatt sent a second Notice and Demand for Trial on a form provided by the California Department of Corrections and Rehabilitation (CDCR), again seeking trial of his pending charges within 90 days. After receiving this second letter, the District Attorney initiated a CDCR transport to bring Hyatt to Orange County for a preliminary hearing. But before the magistrate conducted a preliminary examination on the felony complaint, Hyatt filed a motion to dismiss pursuant to section 1381, based on the original demand sent in August 2022. The magistrate agreed that Hyatt's first letter satisfied the statutory requirements, found that the People had failed to bring him to trial within 90 days, and dismissed the complaint. The District Attorney appealed the dismissal to the Court of Appeal. The notice of

---

demand once Hyatt arrived in prison." (*People v. Hyatt* (2025) 109 Cal.App.5th 735, 744–745 & fn. 7.) While the omission has no bearing on the legal issues presented in this appeal, the case nonetheless illustrates why lawyers must comply with their duty to properly communicate with represented defendants through counsel.

appeal cited Penal Code section 1238, subdivision (a)(8) (section 1238(a)(8)), which authorizes the People to appeal "an order or judgment dismissing or otherwise terminating all or any portion of the action" in a felony case. (§ 1238(a)(8); see also Pen. Code, § 1235 (section 1235).)

The Court of Appeal affirmed the trial court's dismissal of the felony complaint under section 1381. (*People v. Hyatt*, *supra*, 109 Cal.App.5th 735 (*Hyatt*).) As an initial matter, in an unpublished portion of the opinion, a unanimous court rejected Hyatt's contention that the court lacked jurisdiction because the case was not a "felony case" appealable to the Court of Appeal under sections 1235 and 1238(a)(8). The court reasoned that the People's filing of a felony complaint initiated a "felony case" even though the magistrate dismissed the complaint, and no information or indictment was ever filed in the superior court. (*Hyatt* [unpublished portion].) In so holding, the court relied on *People v. Rodriguez* (2013) 217 Cal.App.4th 326, which had similarly concluded that the Court of Appeal may adjudicate the People's appeal of a magistrate's order dismissing felony counts. The court distinguished *People v. Nickerson* (2005) 128 Cal.App.4th 33 (*Nickerson*), which had held a magistrate's order reducing a felony charge to a misdemeanor should have been directed to the appellate division of the superior court, which has jurisdiction over appeals in "misdemeanor cases" (Pen. Code, § 1466), rather than the Court of Appeal. The court in this case agreed with the result in *Nickerson*, but disagreed with a portion of the opinion reasoning that a felony case commences only after an information or indictment is filed in the superior court or a felony complaint is certified to the superior court following a plea of guilty or nolo contendere. (See *Nickerson*, at p. 38; *Hyatt*, at p. 741.)

On the merits, a divided court concluded in a published opinion that Hyatt's section 1381 demand was effective to start the 90-day clock, notwithstanding the fact that Hyatt had not yet been delivered to the custody of the state prison. (*Hyatt, supra,* 109 Cal.App.5th at pp. 741–748.) The majority reasoned that statutory language requiring the defendant to have " 'entered upon a term of imprisonment in a state prison' " was not intended to describe a physical location, but rather "a *type* of defendant who can invoke its provisions, i.e., those defendants who are serving a state prison sentence." (*Id.* at p. 744, quoting § 1381.) The court further reasoned that "[t]he fact that Hyatt was temporarily incarcerated in county jail while awaiting transfer to a state prison facility did not mean he had not begun serving his state prison sentence or make his demand for a speedy trial ineffective." (*Hyatt,* at p. 742.) The Court of Appeal acknowledged that other courts had reached a different conclusion, but declined to follow them. (*Id.* at p. 747, discussing *People v. Gutierrez* (1994) 30 Cal.App.4th 105, 110–111 (*Gutierrez*), and *People v. Clark* (1985) 172 Cal.App.3d 975, 980–981 (*Clark*).)

Justice Motoike dissented. She criticized the majority for adopting a "novel interpretation of section 1381 that is not only unsupported by the statute's plain language or any legislative history, but constitutes an unwarranted departure from decades-old, settled case law that has been followed by courts and criminal law practitioners for the past 40 years." (*Hyatt, supra,* 109 Cal.App.5th at p. 749 (dis. opn. of Motoike, J.).)

The District Attorney sought our review on the grounds that the Court of Appeal erroneously interpreted section 1381, creating a conflict with *Clark* and *Gutierrez.* In his answer to the People's petition, Hyatt renewed his challenge to the Court

of Appeal's appellate jurisdiction.  We granted review to address both issues, each of which has given rise to disagreement among the Courts of Appeal.  Both present questions of statutory interpretation; our review of those questions is de novo.  (*People v. Walker* (2024) 16 Cal.5th 1024, 1032 (*Walker*).)

## II.

We begin with the jurisdictional question.  In criminal cases, the prosecution " 'has no right to appeal except as provided by statute.' "  (*People v. Superior Court (Mitchell)* (2024) 17 Cal.5th 228, 244, quoting *People v. Williams* (2005) 35 Cal.4th 817, 822–823.)  "The circumstances allowing a People's appeal are enumerated in section 1238."  (*People v. Chacon* (2007) 40 Cal.4th 558, 564.)  The District Attorney's notice of appeal cited section 1238(a)(8), which permits the prosecution to appeal an "order or judgment dismissing or otherwise terminating all or any portion of the action[.]"[2] (§ 1238, subd. (a)(8).)  The authorizations in section 1238 are bounded by section 1235, subdivision (a), which empowers "[e]ither party to a felony case" to appeal certain questions of law, specifying that "[t]he provisions of this title" — including section 1238 — "apply only to such appeals."  (§ 1235, subd. (a).)  Subdivision (b) of section 1235 states that an appeal in a felony

---

[2] In his briefing here, the District Attorney also invokes Penal Code section 1238, subdivision (a)(1), which allows the People to appeal "[a]n order setting aside all or any portion of the indictment, information, or complaint."  The District Attorney did not cite subdivision (a)(1) in his original notice of appeal, nor did he mention subdivision (a)(1) in his briefing in the Court of Appeal.  We do not address whether subdivision (a)(1) provides an additional basis for appealing a magistrate's dismissal of a felony complaint on section 1381 grounds.

case "is to the court of appeal" for the district. Thus sections 1235 and 1238 provide for Court of Appeal jurisdiction over appeals only in "felony case[s]." (A separate provision, Penal Code section 1466, governs appeals in infraction and misdemeanor cases, which must instead be taken to the appellate divisions of the superior courts.) Penal Code section 691 then provides that, "unless it is otherwise apparent from context," the term "felony case," as used in the relevant part of the Penal Code, means "a criminal action in which a felony is charged[.]" (§ 691, subd. (f).)

The primary dispute between the parties is whether this case counts as a "felony case" — that is, an action in which a felony is "charged." The District Attorney says it does; Hyatt says it does not, and therefore no appeal lies under sections 1235 and 1238. This also, of course, is not an infraction or misdemeanor case, so no appeal would lie under Penal Code section 1466 either. Hyatt contends that what the District Attorney should have done, rather than attempt to appeal the dismissal of the complaint, was file a motion in superior court to reinstate the complaint. (See Pen. Code, § 871.5.)

In interpreting statutes, we begin by examining the words used, giving them their ordinary, commonsense meaning. (See, e.g., *Walker, supra,* 16 Cal.5th at p. 1032.) Here, the District Attorney seeks review of the dismissal of a criminal complaint against Hyatt alleging that he committed felony offenses. In ordinary legal usage, felony offenses charged by complaint are commonly referred to as "felony charges," and the resulting action as a "felony case." (E.g., *People v. Cota* (2025) 112 Cal.App.5th 1118, 1124 ["a felony complaint charged"]; *Egelston v. State Personnel Bd.* (2025) 112 Cal.App.5th 1050, 1053 [the District Attorney "subsequently charged appellant in

a felony complaint"]; *Teran v. Superior Court* (2025) 112 Cal.App.5th 371, 375 ["A felony complaint . . . charged petitioner"]; see also, e.g., *People v. Henson* (2022) 13 Cal.5th 574, 584 (*Henson*) ["Prior to unification, the complaint in a felony case was filed at the municipal court"].) Common usage thus suggests that this is, in fact, a "felony case" (§ 1235) in which felonies have been "charged" (§ 691), meaning the prosecution is entitled to appeal the dismissal of those charges to the Court of Appeal. Ultimately, we conclude that this straightforward answer is in fact the correct answer. But the question is more complicated than it may at first appear, owing to the nuances of California charging procedure and the complex history that gave rise to the present statutory regime.

## A.

Hyatt's central argument is that he was never formally "charged" with a felony because the district attorney filed only a complaint and not an indictment or information. To understand the argument, we review some familiar background. Under California law, a criminal complaint is, as a formal matter, filed with the magistrate, not the superior court — unlike either an indictment (which is presented to the superior court by a grand jury) or an information, which can be filed in the superior court only after the magistrate conducts a preliminary examination on the felony complaint. (See §§ 738, 806, 889, 917 [collectively establishing this framework].) The "magistrate's primary role relates to a defendant's arrest and detention pending a court trial"; by examining the felony complaint before the filing of an information, the magistrate provides a check on the initiation of formal felony prosecution. (*Henson, supra,* 13 Cal.5th at p. 588; see also *id.* at p. 589 [discussing *Hurtado v. California* (1884) 110 U.S. 516].) This means that the filing of a felony complaint

9

and the magistrate's preliminary examination on the complaint, "while being in some sense the initiation of a criminal case [citations], are components of a threshold proceeding that precedes the formal trial court prosecution of the defendant and that ensures that the district attorney or other prosecutorial authority does not abuse his or her power." (*Henson*, at p. 589.) It is only once the information or other accusatory pleading is filed in superior court that "formal trial court prosecution" begins. (*Ibid.*; see *id.* at p. 588.)

As we have observed, this distinction between magistrate proceedings and superior court proceedings was once clearer than it tends to be in modern practice. At one time, private parties could file criminal complaints directly with the magistrate, without any involvement from a public prosecutor. (*Henson*, *supra*, 13 Cal.5th at p. 587.) But this practice changed more than 50 years ago, thanks to case law requiring that a complaint be approved by the local district attorney. (*Ibid.*, citing *People v. Municipal Court* (*Pellegrino*) (1972) 27 Cal.App.3d 193, 205–206.) In addition, and as particularly relevant to Hyatt's argument here, magistrate proceedings were once conducted in different courts from the courts in which felony trials were held. Before 1998, California had a two-tiered system of trial courts, consisting of superior courts, which handled felonies and high-value civil cases, and so-called inferior courts (either municipal courts or justice courts), which handled misdemeanors, infractions, and low-value civil cases. (California Criminal Procedure and Trial Court Unification: Background Study, California Law Revision Com. Report (2002) pp. 2–4.) "Prior to unification, the complaint in a felony case was filed at the municipal court," with the municipal court judge acting in the capacity of magistrate. (*Henson*, at p. 584.) But in

1998, "the voters approved Proposition 220, permitting unification of the municipal and superior courts," and every county opted in favor of unification. (*Id.* at p. 593.) Now, following unification, "the felony complaint that initiates the magistrate proceeding is filed at the [superior] court" and magistrate proceedings are now conducted by superior court judges, sitting as magistrates. (*Id.* at pp. 588–589, citing *Koski v. James* (1975) 47 Cal.App.3d 349, 354–355; see generally *id.* at pp. 586–590 [describing history of magistrate proceedings].)

As a result of these developments, the institutionally separate role of magistrates "tends to be obscured in modern practice." (*Henson*, *supra*, 13 Cal.5th at pp. 587–588.) But as we explained in *Henson*, the formal legal distinction between magistrate proceedings and superior court proceedings remains relevant for a number of purposes in the law. (*Id.* at pp. 589–590, citing *Serna v. Superior Court* (1985) 40 Cal.3d 239, 257 (*Serna*); see *Henson*, at p. 579 [holding, in part based on this distinction, that section 954 permits a prosecutor to file a single information in the superior court combining related offenses that were the subject of separate preliminary examinations before the magistrate].) The question before us is whether the application of the appellate jurisdiction provisions in Penal Code sections 1235 and 1238 is one of these purposes.

### B.

Based on this institutional distinction between magistrates and superior courts, Hyatt argues that the preliminary proceedings against him before the magistrate never matured into a "felony case," as that term is used in section 1235 and defined in Penal Code section 691. Because no preliminary examination was held, and thus no information or

other accusatory pleading was ever filed in the superior court, *in its capacity as a superior court*, he contends that the People never formally instituted a felony prosecution.

This argument derives from the opinion in *Nickerson*, which articulated this view of what it means to "charge" a felony within the meaning of Penal Code section 691. In *Nickerson*, the court addressed what it described as a novel issue created by trial court unification. (*Nickerson*, *supra*, 128 Cal.App.4th at p. 35.) The prosecutor in that case had filed a criminal complaint alleging two misdemeanors, as well as a third "wobbler" offense charged as a felony. But after the preliminary examination, the magistrate exercised his power under Penal Code section 17, subdivision (b)(5), to reduce the felony charge to a misdemeanor. (*Nickerson*, at pp. 36–37.) The defendant was then tried for two misdemeanors and convicted of one. He tried to appeal that misdemeanor conviction to the Court of Appeal. (*Id.* at p. 36.) The Court of Appeal rejected the effort, concluding that the case was a misdemeanor case appealable only to the appellate division of the superior court under Penal Code section 1466. (*Nickerson*, at pp. 38–39.)

In the portion of the opinion on which Hyatt relies, *Nickerson* reasoned that "a defendant is not 'charged with a felony' within the meaning of Penal Code section 691" until an accusatory pleading charging a felony is filed *in superior court*. (*Nickerson*, *supra*, 128 Cal.App.4th at p. 38.) *Nickerson* cited Penal Code section 949, which provides: "The first pleading on the part of the people in the superior court in a felony case is the indictment, information, or complaint in any case certified to the superior court under Section 859a" — i.e., a complaint to which the defendant has entered a plea of guilty or nolo contendere. (Pen. Code, § 949, see *id.*, § 859a.) In the *Nickerson* court's view,

a felony criminal complaint filed only with a magistrate does not suffice. (*Nickerson*, at p. 38.)

*Nickerson*, in turn, relied for this conclusion on the reasoning of *Serna*. In *Serna*, we were asked to consider whether a four-year delay between the filing of a misdemeanor complaint and the defendant's arrest violated his constitutional rights to a speedy trial. (*Serna, supra*, 40 Cal.3d at p. 245; see Cal. Const., art. I, § 15; U.S. Const., amend. VI.) We held that a misdemeanor complaint was a "formal charge" sufficient to trigger a defendant's right to a speedy trial. (*Serna*, at pp. 257, 262; see *id*. at pp. 251, 258.) We distinguished an earlier case, *People v. Hannon* (1977) 19 Cal.3d 588, 605, which had held that the right to speedy trial did not attach upon the filing of a felony complaint. We explained, among other things, that a "felony complaint, unlike a misdemeanor complaint, does not confer trial jurisdiction." (*Serna*, at p. 257.) Rather, a "felony complaint functions to bring the defendant before a magistrate for an examination into whether probable cause exists to formally charge him with a felony. Only if probable cause exists may an information invoking the trial jurisdiction of the superior court be filed . . . . This step, preliminary to formal accusation in the court with jurisdiction over the prosecution of the charge, does not implicate the Sixth Amendment right to speedy trial[.]" (*Ibid*.)

Based on *Nickerson* and *Serna*, Hyatt argues that because the felony complaint against him was dismissed by the magistrate and thus never came under the jurisdiction of the superior court, there was no "felony case" within the jurisdiction of the Court of Appeal. Neither decision persuades us to Hyatt's point of view.

As an initial matter, both *Serna* and *Nickerson* are readily distinguishable. *Nickerson* did not consider whether an appeal from a magistrate's dismissal of a felony complaint could be taken before the Court of Appeal. Rather, the court held that when a "matter goes before the magistrate for a preliminary examination and the court as magistrate reduces all of the felony charges from felonies to misdemeanors," an appeal of the resulting misdemeanor judgment belongs in the appellate division of the superior court rather than the Court of Appeal. (*Nickerson, supra,* 128 Cal.App.4th at p. 38.) As the Court of Appeal in this case observed, that is a different question that may well invoke different considerations from the issue we confront here.[3]

*Serna,* for its part, concerned matters even further afield. There we considered whether a misdemeanor complaint amounted to a "formal charge" to which speedy trial rights attach. In distinguishing felony cases, we not only noted that there is a formal distinction between the effect of a misdemeanor complaint and that of a felony complaint, but we emphasized practical differences particular to the speedy trial context. (*Serna, supra,* 40 Cal.3d at p. 257 [noting that "the filing of a felony complaint, unlike indictment or accusation by

---

[3] As the Court of Appeal in this case observed, Penal Code section 17, subdivision (b)(5) (section 17 (b)(5)), provides that when a wobbler is reduced from a felony to a misdemeanor, "it is a misdemeanor for all purposes." Hyatt disputes that this provision adequately resolves the issue before the *Nickerson* court, but that dispute is beyond the scope of our inquiry here; the point is only that *Nickerson*'s broader conclusions about the meaning of the term "felony case" were not clearly necessary to the decision in that case.

information, does not threaten oppressive pretrial incarceration," and comes with strict timelines that "ensure that the defendant is not subjected to extended anxiety or public opprobrium"]; accord, *Henson, supra,* 13 Cal.5th at p. 590.) We had no reason to opine on the statutory definition of a "felony case" for purposes of appellate jurisdiction.

Although *Nickerson* did opine on the meaning of the term "felony case," its opinion does not reflect the only possible reading of the plain statutory text. The *Nickerson* opinion assumes that when section 1235 and Penal Code section 691 use the term "felony case," and speak in terms of whether a felony has been "charged," that must mean there has been a "formal accusation in the court with jurisdiction over the prosecution of the charge." (*Serna, supra,* 40 Cal.3d at p. 257.) This is not an implausible conclusion to draw, but it is certainly not one compelled by the statutory text. Neither section 1235 nor Penal Code section 691 specifies that felony charges must be "formal" or that they must be filed "in superior court." And the *Nickerson* opinion offers no clear reason why these provisions must be read in a manner that limits appellate jurisdiction to those cases in which there has been a formal felony accusation of the sort that would, for instance, start the running of the constitutional speedy trial clock, as in *Serna*.

Hyatt, again drawing on *Nickerson*, attempts to fill this gap by way of Penal Code section 949, which specifies that "[t]he first pleading on the part of the people in the superior court in a felony case is the indictment, information, or the complaint certified to the superior court [where the defendant has pleaded guilty or nolo contendere]," while the "first pleading on the part of the people in a misdemeanor or infraction case is a complaint except as otherwise provided by law." (Pen. Code, § 949.) But

by its terms, that provision merely confirms that these superior court filings are the first pleadings filed by the people *in superior court* in a felony case. Penal Code section 949 neither states nor necessarily implies that a felony complaint filed *with a magistrate* does not "charge" a felony (§ 691) or that such a complaint does not give rise to a "felony case" (§ 1235). And aside from Penal Code section 949, Hyatt points to nothing in the Penal Code that would shed any light on the matter.

## C.

While Hyatt's argument about when a "felony case" begins is not clearly supported by the statutory text, neither is it clearly foreclosed. It is therefore appropriate for us to examine the history of the language for more insight into its meaning. (E.g., *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227.) That history supports the reading that ordinary usage would suggest: A case dismissing a felony complaint is a "felony case" over which the Courts of Appeal have jurisdiction.

The "felony case" language at issue was added to section 1235, and the present definition added to Penal Code section 691, as part of a 1998 overhaul of the Penal Code to implement trial court unification. (Sen. Bill No. 2139 (1997–1998 Reg. Sess.), Stats. 1998, ch. 931; see generally *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 763, fn. 2 [describing several changes made by the 1998 court unification legislation].) Before the legislation was enacted, section 1235 authorized the Courts of Appeal to hear an appeal in a "criminal action within the original trial jurisdiction of a superior court." (Former § 1235, Stats. 1951, ch. 1674, § 132, p. 3855.) By contrast, Penal Code section 1466 provided: "An appeal may be taken from a judgment or order of an inferior court, in an infraction or

misdemeanor case, to the superior court . . . ."  (Former § 1466, Stats. 1992, ch. 78 (Sen. Bill 839), § 2.)

The 1998 court unification legislation amended the appellate jurisdiction statutes to eliminate the references to inferior versus superior courts.  The legislation amended section 1235 by replacing the words "criminal action within the original trial jurisdiction of a superior court" with "felony case."  (Stats. 1998, ch. 931, § 379.)  It also amended Penal Code section 1466, eliminating the reference to an "inferior court," while retaining reference to an "infraction or misdemeanor" case.  (*Id.*, § 424.)  Finally, it added Penal Code section 691, subdivision (f)'s definition of a felony complaint as a "criminal action in which a felony is charged," and defined a "misdemeanor or infraction case" in the following subdivision as "a criminal action in which a misdemeanor or infraction is charged[.]"  (Stats. 1998, ch. 931, § 354.)  As a result of these changes, " '[t]he proper appellate procedure is no longer determined by which court (i.e., "inferior" or "superior") issued the order.  It is now determined by the "type" of case. [Citations.]  If the order occurred in an "infraction or misdemeanor case," the proper appeal is to the appellate division of the superior court.  [Citation.]  If the order occurred in a "felony case," the proper appeal is to the Court of Appeal.' " (*People v. Rodriguez* (2013) 217 Cal.App.4th 326, 332; see also *ibid.* [concluding that an appeal from an order dismissing felony counts under section 1387 properly lies in the Court of Appeal].)

Hyatt insists the legislation was not intended to give the prosecution a new appellate remedy — an appeal to the Court of Appeal — when a magistrate dismisses a felony charge.  He relies on remarks from the California Law Revision Commission, which drafted and proposed the legislation, indicating that changes to the appellate jurisdiction statutes

were intended "to preserve existing procedures for criminal cases by replacing references to superior court criminal cases with references to felony cases."[4] (Trial Court Unification: Revision of Codes (July 1998) 28 Cal. Law Revision Com. Rep. (1998) p. 73; see also *id.* at pp. 60, 406.) But as the District Attorney points out, the discussion also emphasizes that the legislation implemented a constitutional amendment that "allow[ed] for statutory expansion of court of appeal jurisdiction." (*Id.* at p. 73.) And perhaps most tellingly, in a comment on the proposed revisions to section 1235 that were ultimately enacted into law, the Report reads: "Section 1235 is amended to accommodate unification of the municipal and superior courts in a county . . . Appeals in felony cases lie to the court of appeal, regardless of whether the appeal is from the superior court, the municipal court, or the *action of a magistrate.*" (*Id.* at pp. 455, 480, italics added.) Although Hyatt insists that this brief comment "was not intended to expand appellate procedures" to include appeals from magistrate proceedings, he fails to explain what else the Commission might

---

[4] Proposition 220 made the constitutional changes necessary to merge the superior and municipal courts, but required implementing legislation to amend the many provisions of the code affected by trial court unification. The Legislature tasked the Law Revision Commission with recommending "statutory changes that may be necessitated by court unification." (28 Law Rev. Com. Rpt. (1998) p. 6, quoting 1997 Cal. Stat. res. ch. 102; see also Stats. 1998, ch. 91.) The Commission prepared a lengthy report proposing dozens of amendments to the code, with explanatory comments. In the sections of the Penal Code relevant here, the Legislature enacted the Commission's proposed amendments verbatim.

have meant by including the "action of a magistrate" in a list of "felony" matters appealable to the Court of Appeal.

In sum, the legislative history supports the conclusion that the statutory language most naturally suggests: If a superior court judge, sitting as a magistrate, dismisses a felony complaint, that dismissal may be appealed to the Court of Appeal pursuant to its statutory jurisdiction over appeals in "felony case[s]." (§ 1235; see *id.*, § 1238.)

## D.

Hyatt contends, finally, that the district attorney should have challenged the magistrate's order using the procedures set forth in Penal Code section 871.5 (section 871.5), rather than appealing directly to the Court of Appeal.

Section 871.5 provides that "when an action is dismissed by a magistrate" pursuant to section 1381 and some other similar sections, "the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint or a portion thereof and to reinstate the custodial status of the defendant under the same terms and conditions as when the defendant last appeared before the magistrate." (§ 871.5.) A corresponding subdivision of section 1238 expressly authorizes the people to appeal the superior court's order "denying the motion of the people to reinstate the complaint or a portion thereof pursuant to Section 871.5." (Pen. Code, § 1238, subd. (a)(9); see also *id.*, § 871.5, subd. (f).)

At the outset, the fact that orders denying a section 871.5 reinstatement motion appear in the list of orders appealable under sections 1235 and 1238 would seem to pose a problem for Hyatt's position regarding the Court of Appeal's exercise of jurisdiction here: as discussed above, those sections "apply only"

to appeals in a "felony case." (§ 1235, subd. (a).) When a superior court denies a motion to reinstate a felony complaint, there has been no indictment, information, or complaint certified pursuant to Penal Code section 859a filed in the superior court. (Pen. Code, § 949.) Nevertheless, section 1238 plainly treats such denials as occurring in a felony case. This would appear to undermine Hyatt's contention that no "felony case" arises from the filing and subsequent dismissal of a felony complaint.

Hyatt responds by pointing to legislative history which, in his view, shows that subdivision (a)(9) was intended as a narrow exception to the general non-appealability of magistrate dismissals. Section 871.5 was first enacted in response to a perceived gap in the available pathways to appeal a magistrate's order dismissing all or part of a felony complaint. Before unification, then-extant divisions of authority between magistrates and trial courts, on the one hand, and between Courts of Appeal and superior courts, on the other, gave rise to substantial uncertainties about whether magistrates had the power to dismiss felony complaints under various dismissal statutes directed at "courts," and, if so, where an appeal from such dismissals would lie. (See generally *People v. Mimms* (1988) 204 Cal.App.3d 471, 475–480.) The Legislature responded in 1980 by enacting legislation that amended a number of statutory provisions to explicitly authorize magistrate dismissals. (See *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 17, fn. 4.) At the same time, the Legislature enacted section 871.5 to "provid[e] a means by which the district attorney can appeal a magistrate's order to dismiss an action" under various statutory authorities. (*Ibid*., citing Stats. 1980, ch. 938, § 4, at p. 3192.) Not long thereafter, the Legislature

amended section 871.5 "to add all other statutory grounds for a dismissal of the complaint by a magistrate" including section 1381. (*Mimms*, at p. 478, fn. 7.)

Although nothing in the text of section 871.5 says that it is exclusive of other applicable review procedures, Hyatt relies on *Mimms* to argue that the District Attorney's only path to review runs through section 871.5. In *Mimms*, a pre-unification case, the Court of Appeal concluded that the appellate division of the superior court lacked jurisdiction to review a dismissal under the version of Penal Code section 1466 then in effect. In a brief treatment of the issue, *Mimms* held that "section 871.5 is the exclusive method by which the People may obtain a review of a magistrate's order of dismissal." (*Mimms*, *supra*, 204 Cal.App.3d at p. 481.) The court reasoned that treating section 871.5 as the exclusive means of challenging a magistrate's dismissal would "avoid the confusion apparent in using Penal Code section 1466 to review a magistrate's order of dismissal," as well as various practical difficulties, including appellate delay. (*Mimms*, at p. 481.)[5]

*Mimms* does not help Hyatt's case. The court there considered the appealability of an order from an "inferior court" under former Penal Code section 1466. It did not speak to whether a magistrate's dismissal order was appealable to the Courts of Appeal under the version of section 1235 then in force,

---

[5] Hyatt also points to *People v. Shrier* (2010) 190 Cal.App.4th 400, 409, which postdates unification. But Shrier simply quoted the "exclusive method" language from *Mimms* in a brief rule statement — and the court there was not considering the propriety of a direct appeal, because the People arrived at the Court of Appeal after making and losing a motion for reinstatement of the complaint under section 871.5.

much less the version in effect today. And more to the point, as the Court of Appeal has since observed, the legislation implementing trial court unification — including pertinent changes to section 1235 — has cleared up the confusion that prompted the exclusivity rule of *Mimms*. (See *People v. Rodriguez* (2013) 217 Cal.App.4th 326, 332 [agreeing that "the exclusivity rule stated in *Mimms* is essentially a relic of the days before unification of the municipal and superior courts"].) Hyatt does not deny the point; he simply asserts that "[e]ven if section 871.5 is not always the exclusive method of seeking review of a magistrate's dismissal, it was an efficient and readily available method here, and direct appeal to the court of appeal was the wrong method." For reasons already explained, we are unpersuaded by Hyatt's argument that direct appeal to the Court of Appeal was the "wrong method." Because Hyatt offers no other reason to think that the prosecutor was bound to proceed in superior court under section 871.5, the argument fails.

In sum, the appellate jurisdiction statute permitted the Court of Appeal to adjudicate the People's appeal of a magistrate's order dismissing a felony complaint. (§§ 1235, 1238.) We disapprove *People v. Nickerson* (2005) 128 Cal.App.4th 33, to the extent the reasoning of the opinion is inconsistent with this conclusion; going forward, courts should not rely on *Nickerson*'s conclusions about when a felony is "charged" within the meaning of Penal Code section 691.

## III.

Having concluded that the Court of Appeal had jurisdiction over the appeal, we now turn to the merits of its reading of section 1381. As the court acknowledged, its reading

of that provision differed from the reading other courts had given it in previous decades. (See *Gutierrez, supra,* 30 Cal.App.4th at pp. 110–111; *Clark, supra,* 172 Cal.App.3d at pp. 980–981.) We conclude the Court of Appeal's contrary reading was in error.

First enacted in 1931, section 1381 provides, as amended, that any defendant who "has been sentenced to and has entered upon a term of imprisonment in a state prison," but still faces other pending criminal proceedings, may demand that "the district attorney of the county in which the matters are pending shall bring the defendant to trial or for sentencing within 90 days after the person shall have delivered to said district attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial or for sentencing[.]" (§ 1381; see Stats. 1931, ch. 486, p. 1060.) If the defendant is not brought to trial within 90 days, "the court in which the charge or sentencing is pending shall . . . dismiss the action." (§ 1381.)

Section 1381 is one in a series of statutory speedy trial provisions we have described as " 'supplementary to and a construction of' " the constitutional right to a speedy trial. (*People v. Martinez* (2000) 22 Cal.4th 750, 766.) The overarching purpose of the provision is to allow incarcerated defendants to clear outstanding charges in a timely fashion. (See *People v. Simpson* (1973) 30 Cal.App.3d 177, 181 [section 1381 "was placed in the law so that a prisoner could clean up pending charges . . . so that he would not have these charges hanging over him and waiting for him on his release"].) And the primary function of the 90-day timeline, as courts have described it, " ' " 'is to permit a defendant to obtain concurrent sentencing at the hands of the court in which the earlier

proceeding is pending, if such is the court's discretion.' " ' " (*People v. Wagner* (2009) 45 Cal.4th 1039, 1056.)

"Because failure to comply with section 1381 results in 'the drastic sanction of dismissal' [citation], courts have required defendants to comply strictly with statutory requirements." (*People v. Garcia* (1985) 171 Cal.App.3d 1187, 1191.) The dispute in this case concerns one statutory requirement in particular. Section 1381 states that only a defendant who "has entered upon a term of imprisonment in a state prison" can make a valid demand. (§ 1381.) Hyatt argues that his section 1381 demand — which was sent from county jail while he awaited post-sentencing transfer to state prison — complied with the statute because he had by then "entered upon a term of imprisonment." The District Attorney counters that a defendant must submit a section 1381 demand while physically "in a state prison."

To resolve this interpretive dispute, we again begin by consulting the ordinary meaning of the words used. (*People v. Hammer* (2003) 30 Cal.4th 756, 762.) But parsing the words "entered upon a term of imprisonment in a state prison," at least in isolation, yields no clear answers. At the time section 1381 was enacted, the leading American dictionary defined the verb "enter" as "to go or come into a place or condition." (Webster's New International Dictionary, p. 730 (1930 ed.).) This is, of course, the heart of the dispute: The District Attorney contends that section 1381 requires entry into a place (state prison), while Hyatt thinks it requires entry into a condition (serving a term of imprisonment). The addition of "upon" does not resolve the difficulty. The same dictionary entry gives two examples of this prepositional phrase, one physical, the other conceptual: "the explorers entered upon a desert tract," and "to enter upon a

24

career." (Webster's New International Dictionary, p. 730 (1930 ed.).)

That brings us to the phrase that immediately follows: "term of imprisonment in a state prison." The District Attorney contends that this clause can be interpreted only as requiring physical presence. We are unpersuaded. It is not obvious that "in a state prison" should be parsed as a separate prepositional clause identifying the *place* from which a demand must be sent. Instead, those words might serve an adjectival function, to distinguish a state prison sentence from other possible conditions of confinement, like a term in county jail. Use of the indefinite article ("in *a* state prison" rather than "in state prison") is perhaps suggestive of location, but not unambiguously so.

The Court of Appeal sought to unravel this knot by consulting surrounding provisions concerning other categories of individuals who may make section 1381 demands. (See, e.g., *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659 [courts must construe words in context].) As the court observed, section 1381 applies not just to defendants in state prison, but to persons housed in several other types of custodial institutions, including any offender who: (1) "has been sentenced to and has entered upon a term of imprisonment in a county jail for a period of more than 90 days"; (2) "has been committed to and *placed in* a county jail for more than 90 days as a condition of probation"; (3) "has been committed to and *placed in* an institution subject to the jurisdiction of the Department of the Youth Authority"; or (4) "has been committed to the custody of the Director of Corrections pursuant to Chapter 1 (commencing with Section 3000) of Division 3 of the Welfare

and Institutions Code and has entered upon his or her term of commitment[.]" (§ 1381, italics added.)

The Court of Appeal concluded that these surrounding provisions unambiguously favored Hyatt's proposed interpretation of section 1381. The court reasoned that use of "placed in" with respect to several other categories of offenders signified an express requirement of physical presence and inferred that the different language respecting state prisoners was clearly meant to have a different, non-physical meaning. (*Hyatt*, *supra*, 109 Cal.App.5th at p. 792.) In dissent, however, Justice Motoike drew the opposite conclusion from the provisions respecting other defendants, noting that "section 1381 uses the word 'in' with respect to all categories of defendants," reflecting an overarching intent to require all types of offenders to reach their physical location of confinement before making a section 1381 demand. (*Id.* at p. 750, fn. 2 (dis. opn. of Motoike, J.).)

We do not find the provisions respecting other types of defendants to be particularly telling in either direction, much less dispositive of the question before us. For one thing, the verb "place" partakes of much the same ambiguity as "enter"; it can refer to a physical location, but it also sometimes refers to a condition. (See Merriam-Webster Dict. (2026 ed.) [defining "place" as "to put in as if in a particular place or position" and as "to put in a particular state"].) The use of the preposition "in" is, if anything, even more ambiguous. And neither the Court of Appeal majority nor the dissent explained what to make of the fourth category, offenders in narcotics treatment facilities "committed to the custody" of the Department of Corrections, who have "entered upon [their] term of commitment."

More fundamentally, it is unclear that the Legislature's wording choices with respect to these other categories have any bearing whatsoever on its intended meaning of the phrase "entered upon a term of imprisonment in a state prison"; they may simply reflect differences in the types of custodial settings.[6] The statutory language regarding other types of offenders does not, in short, unambiguously reveal the intended meaning of a "term of imprisonment in a state prison." (See *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011– 1013 [declining to apply the maxims of *noscitur a sociis* or *ejusdem generis* where they did not help to "ascertain and effectuate the underlying legislative intent"].)

Taking a different tack, the District Attorney invokes the usual rule directing us to avoid, if possible, "a reading that renders any part of a statute superfluous." (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1030.) Section 1381 provides that a defendant may file a demand when that person "[1] has been

---

[6] For example, an order committing a juvenile to confinement in the Youth Authority is not a "sentence" to a term of "imprisonment." (See Welf. & Inst. Code, § 726, subd. (d); *In re Eric J.* (1979) 25 Cal.3d 522, 530–531, 533; *In re James A.* (1980) 101 Cal.App.3d 332, 338.) The same can be said of an order placing a defendant on probation, with a condition that the defendant serve a period of confinement in a county jail. Upon granting probation, the court either suspends imposition of the sentence or imposes the sentence but suspends its execution. (Pen. Code, § 1203.1, subd. (a); *People v. Brasley* (1974) 41 Cal.App.3d 311, 315.) Section 1381's differing terminology for those "committed to and placed in" the youth authority or in county jail as a condition of probation, and those "sentenced to and . . . entered upon a term of imprisonment in a state prison . . . or county jail," reflects the different nomenclature for each disposition.

sentenced to *and* [2] has entered upon a term of imprisonment in a state prison." (§ 1381, italics added.) As the District Attorney notes, if a person who has been sentenced to state prison but not yet been delivered to prison custody has "entered upon a term of imprisonment," then it is not clear what work that phrase is doing; it would appear to suffice that the defendant has been "sentenced to . . . a term of imprisonment in a state prison." Hyatt does not respond. We agree with the District Attorney that the inclusion of both phrases suggests that the Legislature meant for "entered upon a term of imprisonment in a state prison" to capture a different concept from the mere fact of sentencing. But, without more, it does not necessarily follow that the Legislature intended to impose a requirement of physical presence in prison. (See, e.g., *People v. Reynoza* (2024) 15 Cal.5th 982, 993 [" ' "[T]he canon against surplusage is [merely] a guide to statutory interpretation and is not invariably controlling." ' "].)

The critical issue, in the end, is what "entered upon a term of imprisonment in a state prison" might mean, if not merely having received a sentence to a state prison term. Section 1381 itself supplies no clear answers. But another provision of the Penal Code, section 2900, expressly defines when a term of imprisonment commences in terms that support the District Attorney's proposed physical entry requirement. Subdivision (a) of that section provides in full: "The term of imprisonment fixed by the judgment in a criminal action commences to run only upon the *actual delivery* of the defendant into the custody of the Director of Corrections *at the place* designated by the Director of Corrections as a place for the reception of persons convicted of felonies." (§ 2900, subd. (a), italics added, (section 2900(a)).) The following subdivision then states that, with certain

exceptions for emergencies and concurrent sentencing not relevant here, "the place of reception shall be an institution under the jurisdiction of the Director of Corrections." (§ 2900, subd. (b).) A subsequent provision, Penal Code section 2900.5, subdivision (a), then clarifies that "all days of custody of the defendant," including time in county jail, "shall be credited upon his or her term of imprisonment." (§ 2900.5, subd. (a); discussed in *Hyatt, supra,* 109 Cal.App.5th at p. 746.)

Section 2900(a) is not a new rule. Materially similar language has appeared in the statute books for more than 150 years. In 1872, the Legislature enacted a predecessor, former section 670, as part of California's first modern Penal Code, which provided that "the term of imprisonment fixed by the judgment in a criminal action commences to run only upon the *actual delivery of the defendant at the place of imprisonment*[.]" (1872 Penal Code, § 670, italics added.) That was the definition on the books in 1931, when section 1381 was enacted.[7]

As Hyatt rightly notes, section 2900(a) is not, by terms, incorporated into the title containing section 1381 and it appears in a different part of the Penal Code. We do not import it mechanically. But " '[i]t is a well settled rule that different statutes relating to the same subject are to be considered together.' " (*People v. La Barre* (1924) 193 Cal. 388, 391.) And, contrary to Hyatt's contention, nothing in the text or surrounding context of section 2900(a) indicates that its definition of when a "term of imprisonment" commences is

---

[7] Former section 670 was moved to section 2900 in 1941. (Stats. 1941, ch. 106.) The legislature replaced "at the place of imprisonment" with the current language ("into the custody of the Director of Corrections . . .") in 1945.

limited to some limited or technical purpose.[8]  The definition appears in Part 3 of the Penal Code ("Of Imprisonment and the Death Penalty"), in the title "Imprisonment of Male Prisoners in State Prisons," in the chapter "Execution of Sentences of Imprisonment."  In other words, section 2900(a) is in exactly the place one would look for generally applicable statutory guidance as to when a "term of imprisonment" begins.

The same was even more clearly true of the historic precursor of section 2900(a).  From the time of its enactment in 1872, through the drafting of section 1381 in 1931, the comparable language of former section 670 appeared in a catchall title labeled simply "General Provisions," addressing various matters relating to crime and their punishments.  (1872 Pen. Code, former § 670, p. 160; 1924 Pen. Code, § 670, p. 420.)

---

[8] Hyatt argues to the contrary, relying on *People v. Gonzalez* (2019) 39 Cal.App.5th 115 (*Gonzalez*).  *Gonzalez* addressed a different question:  whether, for purposes of the consecutive sentencing provision of former section 667, subdivision (c)(8), a defendant sentenced to state prison for probation violations and held in the sheriff's custody at the county jail pending the resolution of other charges, can be said to be "already serving" the prison sentence on the probation violations.  The court answered yes.  In so holding, the court rejected the defendant's reliance on section 2900:  "Section 2900 concerns the commencement of a 'term of imprisonment' and is in a chapter regarding custody credits.  As the People correctly recognize, section 2900 is not incorporated into former section 667, subdivision (c)(8)." (*Gonzalez*, at p. 122.)  We have no occasion here to review the distinct statutory interpretation issue presented in *Gonzalez*, but its conclusions about the meaning of the term "already serving" in former section 667, subdivision (c)(8) have no direct bearing here.

The Court of Appeal in this case does not appear to have considered section 2900(a). But the majority did cite Penal Code section 2900.5, subdivision (a), which, as noted, provides that "all days of custody of the defendant," including time in county jail, "shall be credited upon his or her term of imprisonment." (*Hyatt*, *supra*, 109 Cal.App.5th at p. 746.) Unlike the more categorical definitional language in section 2900(a), Penal Code section 2900.5 *is* clearly a provision of limited scope, for use in calculating sentencing credits. And to the extent it speaks to the issue at all, it appears to presuppose that a "term of imprisonment" commences upon a defendant's arrival. This is no surprise, since Penal Code section 2900.5 was written against the backdrop of section 2900(a); it was not until section Penal Code 2900.5 was enacted in 1971 that criminal defendants became eligible for credits against their prison sentence for time spent in custody before delivery to the Director of Corrections. (Former § 2900.5, added by Stats. 1971, ch. 1732, § 2, p. 3686.) The fact that Penal Code section 2900.5 might provide a credit against that term does not mean, as the Court of Appeal supposed, that "the time Hyatt spent in [county] custody was part of his state prison sentence" for purposes of section 1381. (*Ibid*.)

This statutory backdrop naturally informs the interpretation we give to the Legislature's choice to require a defendant to enter "upon a term of imprisonment in a state prison" before making a section 1381 demand. The Penal Code provides that "[w]ords and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, *and any others as may have acquired a peculiar and appropriate meaning in law*, shall be construed according to that peculiar and appropriate meaning."

(§ 7, subd. (c), italics added.)  It would have been surprising for the Legislature to silently depart from the established definition of when a "term of imprisonment" begins.  Construing section 1381 "in light of the whole system of law of which it is a part," (*Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 169), we conclude that when the Legislature referred to a defendant's "entry upon a term of imprisonment in a state prison," the most natural conclusion is that the Legislature intended to require a defendant's delivery into prison custody, in keeping with section 2900 (a) and its precursor statute.  This generally occurs upon physical reception at the prison.  (§ 2900, subd. (a).)  So, as a general rule, physical presence in state prison is a condition of a valid section 1381 demand.

The Court of Appeal drew a different conclusion from the drafting history of section 1381, noting that the bill at one time would have required that the defendant be brought to trial " 'within ninety days after such defendant has been *delivered to* such state prison.' "  (*Hyatt, supra,* 109 Cal.App.5th at p. 746, quoting Assem. Bill No. 1917 (1931 Reg. Sess.) as introduced Apr. 9, 1931.)  The court concluded that the deletion of the italicized language revealed a conscious choice not to require that the defendant be physically present in state prison.  As the District Attorney notes, however, the deletion of the challenged language was made as part of an unrelated shift in approach: Rather than start the 90-day clock upon the delivery of the defendant to prison, the Legislature instead chose to start the 90-day clock upon the sending of a demand letter.  In specifying when that letter could be sent, the Legislature employed a phrase — "entered upon a term of imprisonment in a state

prison" — that background law would have suggested to be the essential equivalent of delivery to a state prison.

It is not surprising that the Legislature in 1931 would have wished for persons sentenced to state prison to await their arrival in prison custody before submitting a section 1381 demand. Even today, when submitted from a state prison, compliance with a section 1381 demand requires the coordination of various disparate actors in the criminal justice system, including both state officials in the Department of Corrections and local district attorneys. As the facts in this case illustrate, permitting defendants to send section 1381 letters while awaiting imminent transfer from county jail would require the cooperation of yet another layer of officialdom — the local sheriffs who oversee county-level detention. As the dissenting justice below observed, logistical difficulties can arise "when the defendant is still in the postsentencing process of being transferred between institutions, such as from a county jail to a state prison where the defendant is ultimately settled to serve out the term of imprisonment imposed." (*Hyatt*, *supra*, 109 Cal.App.5th at p. 750 (dis. opn. of Motoike, J.); see *Gutierrez*, *supra*, 30 Cal.App.4th at p. 111 [citing the "difficulty of tracking appellant" whose section 1381 demand listed only his county jail address and identification].)

However significant those difficulties might be today, they would of course have been more daunting in 1931, when there were no computers, cell phones, fax machines, scanners, freeways, or even electric typewriters. If the defendant filed a section 1381 demand before delivery into prison custody, the prosecution might well have had difficulty locating and definitively identifying the defendant, using only the technology and methods of communication available at the time.

Identification problems would have been compounded if, as was not uncommonly the case, the defendant used more than one alias (see, e.g., *Clark, supra*, 172 Cal.App.3d at p. 981) or had a common name that was shared by multiple inmates. It is not surprising that the 1931 Legislature would have attempted to reduce these difficulties by requiring defendants to mail their section 1381 demands from prison, thus substantially simplifying the task of tracking them down.

Hyatt argues that we should err on the side of starting the 90-day clock earlier rather than later because courts may toll the 90-day limit in appropriate cases and ordinarily the prosecution can simply refile charges if the 90-day time limit lapses. (See *People v. Boggs* (1985) 166 Cal.App.3d 851, 854–855 [tolling 90-day period where the defendant was unavailable for trial in one county because he was being detained for trial in another]; § 1387 [providing for refiling of felony charges after a section 1381 dismissal].) But tolling is only available in a limited number of cases, and refiling is generally not an option where the felony charge has been dismissed more than once (see *People v. Juarez* (2016) 62 Cal.4th 1164, 1167 ["Penal Code section 1387 generally permits a felony charge to be dismissed and refiled once, but not twice"]). In any event, Hyatt's reliance on the possibility of refiling dismissed charges only underscores the ways in which his reading of the statute departs from its purpose. Section 1381 is designed to *expedite* trial; it "was never intended to be used as a means of avoiding prosecution." (*People v. Eldridge* (1997) 52 Cal.App.4th 91, 95, citing *Boggs* at p. 855.) Defaults arising from mere logistical confusion frustrate section 1381's goal of expediting criminal proceedings, without actually protecting the defendant's speedy trial rights.

We recognize that a prison custody requirement may raise its own practical concerns. Hyatt, for instance, notes that while defendants typically still have access to counsel at the conclusion of sentencing to assist them in preparing speedy trial demands, they may well lack access after arriving in state prison. And as the Court of Appeal noted, requiring a defendant to wait until delivery to prison custody may in some cases impair "for reasons completely outside the defendant's control, the defendant's ability to promptly dispose of his or her case and secure the potential benefit of concurrent sentencing." (*Hyatt, supra*, 109 Cal.App.5th at p. 747.)

There are, however, ways to mitigate these concerns. Defense lawyers may, for instance, assist their clients in preparing section 1381 demands even though the demand may not be sent before the client is transferred to prison custody. And as the District Attorney acknowledged at oral argument, in the event an unusually long delay in transfer interfered with a defendant's opportunity to obtain a concurrent sentence in a pending matter, the sentencing court could consider in its discretion whether to adjust the defendant's credits accordingly.

Ultimately, whether these concerns should prompt a different approach to section 1381 demands is a matter only the Legislature can decide. Our job is to give effect to the law as the Legislature has enacted it. After considering the existing language of the provision and its broader statutory and historical context, we now confirm the understanding of section 1381 reflected in decades of prior case law. Section 1381's requirement that a defendant "enter[] upon a term of imprisonment in a state prison" requires that the defendant have been delivered to prison custody before submitting a speedy trial demand.

## IV.

Because the operative section 1381 demand in this case was sent before the defendant had been delivered to prison custody, the demand did not start the 90-day clock.  We reverse the judgment of the Court of Appeal, and remand the case to that court with directions to remand the matter to the magistrate with orders to reinstate the felony complaint.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**EVANS, J.**
**GOLDMAN, J.**\*

---

\*      Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Hyatt

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 109 Cal.App.5th 735
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S290426
**Date Filed:** August 6, 2026

_____

**Court:**  Superior
**County:**  Orange
**Judge:**  Justin Glenn-Leistikow

_____

**Counsel:**

Todd Spitzer, District Attorney, and Mina Said, Deputy District Attorney, for Plaintiff and Appellant.

Garrick Byers, under appointment by the Supreme Court, for Defendant and Respondent.

Cindi B. Mishkin for Appellate Defenders, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mina Said
Deputy District Attorney
300 North Flower Street
Santa Ana, CA 92703
(714) 469-4129

Garrick Byers
Attorney at Law
P.O. Box 150786
San Rafael, CA 94915
(510) 965-9505